UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEPHEN VINSON,

                Plaintiff,                        MEMORANDUM AND ORDER
                                                                       15-CV-01452

  - against -


THE CITY OF NEW YORK, VICTOR ENG,
IGOR BONDARENKO, and "JOHN DOE"
#1-3, in their individual capacities and in their
official capacities,

                Defendants.
------------------------------------------------------------x

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEPHEN VINSON,

                Plaintiff,                        MEMORANDUM AND ORDER
                                                                       16-CV-06934

  - against -


WILLIAM TOBIN, MATTHEW SPANO,
and MICHAEL DELANEY, in their
individual capacities and in their official
capacities,

                Defendants.
------------------------------------------------------------x

GLASSER, Senior United States District Judge:

      On March 19, 2015, Plaintiff Stephen Vinson ("Vinson" or "Plaintiff") brought 42 U.S.C. § 1983 claims against the City of New York (the "City"), Victor Eng, Igor Bondarenko, and "John Doe" # 1-3, (collectively, "Vinson I Defendants") alleging false imprisonment, delay in arraignment, unreasonable seizure, denial of due process, federal and common law malicious

1

prosecution, and municipal liability under *Monell* ("Vinson I"). (ECF No. 1, "Vinson I Compl."). Plaintiff withdrew all claims in Vinson I except for malicious prosecution and delay in arraignment. (ECF No. 44 at 1). On December 15, 2016, the day discovery closed in Vinson I, Vinson brought a second action asserting a Section 1983 claim against Defendants William Tobin, Matthew Spano, and Michael Delaney, (collectively, "Vinson II Defendants"), for delay in arraignment ("Vinson II"). (ECF No. 1, "Vinson II Compl."). On February 28, 2017, the two actions were consolidated. (Vinson I ECF No. 25; Vinson II ECF No. 11). Pending before the Court is Vinson I Defendants' Motion for Summary Judgment, (ECF No. 36), and Vinson II Defendants' Motion to Dismiss, (ECF No. 19), pursuant to Rules 56 and 12(b)(6) of the Federal Rules of Civil Procedure, respectively. For the reasons explained below, Vinson I Defendants' Motion for Summary Judgment is **DENIED** and Vinson II Defendants' Motion to Dismiss is **GRANTED**.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.

All Defendants are police officers employed by the New York City Police Department. (Vinson I Compl. ¶¶ 9-13; Vinson II Compl. ¶¶ 7-12). On December 22, 2013, at approximately 1:40 a.m., Vinson was near a NYCHA housing development in Brooklyn when he was shot three times. (Vinson I Compl. ¶¶ 17-19; Vinson I ECF No. 37 ¶¶ 1-2). A large crowd formed around him and five to ten minutes later, Vinson I Defendants arrived on the scene. (Vinson I ECF No. 42 ¶¶ 56-58; Vinson I ECF No. 37 ¶¶ 5-6). He was transported by ambulance to Lutheran Medical Center, where he received life-saving surgery and remained unconscious for two days. (*Id.* at ¶¶ 17-18).

While Vinson was unconscious in the hospital, Vinson I Defendants investigated both his background and the crime scene. (*Id.* at ¶ 18). At approximately 3:20 a.m., Defendant Eng discovered a bag of crack cocaine on the ground where Vinson was found lying and his supervisor, Sergeant Piper, discovered that Vinson was subject to a Notice of Trespass, which stated that he could be arrested and prosecuted if he were found on NYCHA property. (*Id.* at ¶¶ 19, 22). Sergeant Piper then ordered Defendant Bondarenko to prepare the arrest paperwork, which ultimately provided

> "SILA One twist of alleged crack cocaine was recovered from the floor where deft was laying on the floor."

(ECF No. 43, "Bellin Decl." Exs. 8, 9). Vinson was arrested in the hospital that morning for Trespass in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh Degree, but he does not know which police officer arrested him. (Vinson I ECF No. 37 ¶ 27). Ultimately, he was only charged for the drug offense and in the Complaint Room Screening Sheet, the Assistant District Attorney wrote, in part,

> PO OBSERVED DEFT LAYING ON GROUND ALONG THE WALKWAY OF A NYCHA BUILDING.
>
> PO ENG RECOVERED ONE PLASTIC TWIST CONTAINING CRACK COCAINE FROM THE GROUND NEXT TO THE DEFT.
>
> DEFT ARRESTED AT THE SCENE. NO STATEMENTS.

(Bellin Decl., Ex. 12). The Criminal Court Complaint, signed the same day by Bondarenko, provided

> DEPONENT IS INFORMED BY THE SUPPORTING DEPOSITION OF POLICE OFFICER ENG . . . THAT, AT THE ABOVE TIME AND PLACE, THE INFORMANT OBSERVED THE DEFENDANT IN POSSESSION OF A QUANTITY OF CRACK COCAINE IN THAT INFORMANT RECOVERED ONE PLASTIC BAG CONTAINING CRACK COCAINE FROM THE GROUND NEXT TO THE DEFENDANT.

3

(Bellin Decl, Ex. 10).

For the next 12 days, Vinson remained handcuffed and shackled to his hospital bed in the Intensive Care Unit ("ICU"). (Vinson I Compl. ¶¶ 27, 33). On January 3, 2014, he was discharged and was arraigned within two hours. (Vinson I ECF No. 37 at ¶ 42). The court released him on his own recognizance and on August 5, 2014, the remaining drug charge was dismissed upon motion of the government because it could not "prove guilt beyond a reasonable doubt." (*Id.* at ¶ 43; Vinson I Compl. ¶ 37; Bellin Decl., Ex. 14). Six days later, Vinson served a Notice of Claim upon the Comptroller of the City of New York. (Bellin Decl., Ex. 16).

## LEGAL STANDARD

### I. Motion to Dismiss Pursuant to Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the non-moving party's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns*, 493 F.3d at 98. But the Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

## II. Motion for Summary Judgment Pursuant to Rule 56

Summary judgment is appropriate when there are "no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). A genuine issue of material fact exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 248 (1986). The moving party has the burden to demonstrate the absence of a genuine issue of material fact, and the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the non-movant who must demonstrate that a genuine issue of fact does exist. *Id.* at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the nonmovant has met that requirement, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y. 2007). Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

# DISCUSSION

I. **Vinson's "Statement of Disputed Facts and Additional Material Facts Pursuant to Local Rule 56.1"**

Local Civil Rule 56.1 requires that a party moving for summary judgment submit a list of the material facts as to which there is no genuine issue to be tried, along with "citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." The party opposing the motion must submit a corresponding statement, responding to the movant's facts, and any fact not specifically controverted is deemed admitted for purposes of the motion. *Id.* Where the nonmovant opposes a statement of fact, his Rule 56.1 statement must also "be followed by citation to evidence which would be admissible." *Id.*

"Statements in an affidavit or Rule 56.1 statement are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative or do not cite to supporting evidence." *Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc.*, No. 09-CV-1410 (KAM), 2012 WL 6091570, at *6 (E.D.N.Y. Dec. 7, 2012), *report and recommendation adopted in part*, No. 09-CV-1410 (KAM) (RLM), 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013). Where a nonmovant files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted. *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-CV-2614 (ILG), 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011).

Vinson's "Statement of Disputed Facts and Additional Material Facts Pursuant to Local Rule 56.1" is not "a corresponding statement, responding to the movant's facts," in accordance with the Rules. Instead, his statement contains his own arguments, many of which are not supported with citations to the record. Accordingly, the Court will strike paragraphs 1 through 54 of Vinson's statement and will deem admitted those assertions in Defendants' Rule 56.1 statement that are supported by admissible evidence.

## II. Vinson's Malicious Prosecution Claims

Defendants argue that Vinson's common law malicious prosecution claim must fail because his August 11, 2014, Notice of Claim was untimely and failed to list Eng and Bondarenko as potential defendants. First, Vinson served his Notice of Claim only six days after the drug charge was terminated in his favor, which was when his claim for malicious prosecution arose. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). This was well within the 90-day notice requirement. N.Y. Gen. Mun. Law § 50-e(1)(a). Second, while Vinson did not list Eng and Bondarenko as potential defendants in the case caption of the Notice, he did write

> [W]hile the claimant was being treated at Lutheran Medical Center, police officer Victor Eng . . . and another New York City police officer whose identity is unknown to the claimant, but who may have been police officer Igor Bondarenko . . . arrested the claimant on false criminal charges of Criminal Possession of Controlled Substance in the 7th Degree . . . .
>
> On information and belief, on December 22, 2013, police officer Igor Bondarenko, acting at the request and on behalf of police officer Victor Eng, instituted a criminal proceeding in the Criminal Court of the City of New York, County of Kings, under docket No. 2013KN000375, accusing the claimant of the crime of Criminal Possession of a Controlled Substance in the Seventh Degree.

(Bellin Decl., Ex. 16). While the Court "must construe the notice of claim strictly to ensure that the defendants are properly named as respondents in the notice of claim," *DC v. Valley Cent. Sch. Dist.*, No. 7:09-CV-9036 (WWE), 2011 WL 3480389, at *2 (S.D.N.Y. June 29, 2011), "a mistake, omission, irregularity or defect made in good faith in the notice of claim . . . not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby." N.Y. Gen. Mun. Law § 50-e(6). The Court finds that Vinson's description of his claim was sufficient to place the City on notice that Eng and Bondarenko could be named as defendants in a malicious prosecution action and therefore, Defendants were not prejudiced. Accordingly, the

7

Court will exercise supplemental jurisdiction over Vinson's common law malicious prosecution claim.

To determine whether a plaintiff has pleaded and proved a Section 1983 claim against a state actor for malicious prosecution, the Court looks to the elements of a malicious prosecution claim under New York law, which are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010); *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) ("We now clarify that federal law defines the elements of a § 1983 malicious prosecution claim, and that a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements."). Defendants claim that Vinson failed to satisfy several of these elements, each of which are addressed below.[1]

### A. Initiation or Continuation of an Action

Under New York law, "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court." N.Y. Crim. P. Law § 100.05. Defendants argue that the Assistant District Attorney is the only person who drafted the criminal complaint and initiated Vinson's prosecution and therefore they cannot be found liable for malicious prosecution. (Vinson I ECF No. 36 at 7). "However, a person who does not file a complaint commencing a criminal proceeding may be found to have instituted the proceeding for malicious prosecution purposes when the person plays an active role in the initiation and continuation of criminal proceedings

---

[1] There is no dispute that the criminal proceeding was terminated in Vinson's favor upon motion of the District Attorney. (Bellin Decl., Ex. 14). Even if there was a dispute, the Court finds that the proceeding was terminated in a manner indicating Vinson's innocence. *Lanning*, 908 F.3d at 29.

8

against [the] plaintiff." *Mazza v. City of New York*, No. 98-CV-2343 (ILG), 1999 WL 1289623, at *6 (E.D.N.Y. July 13, 1999).

There is a genuine issue of fact as to whether Defendants Eng and Bondarenko played an active role in the institution and continuation of the prosecution against Vinson when they claimed the crack cocaine was recovered from where Vinson was lying on the floor. Defendants' argue that because Eng conveyed and Bondarenko wrote that the crack cocaine was found *where* Vinson was lying on the floor and not *when* he was lying on the floor, it was made clear that the crack cocaine was found after Vinson was removed from the scene. However, there is an issue of fact as to whether a jury would agree. Indeed, even the Assistant District Attorney understood Defendants' statement to mean that they recovered the crack cocaine "from the ground next to the deft." (Bellin Decl., Ex. 12). That is further evidenced by the fact that she mistakenly believed Vinson was arrested at the scene, rather than in the hospital, after the search was conducted. (*Id.*). Further, Bondarenko signed the Criminal Court Complaint providing "the informant observed the defendant in possession of a quantity of crack cocaine" and "informant recovered one plastic bag containing crack cocaine from the ground next to the defendant," which were obviously false statements. (Bellin Decl., Ex. 10). Whether Bondarenko knew they were false is an issue to be determined at trial.

### B. Probable Cause

"In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *DiBlasio v. City of New York*, 102 F.3d 654, 659 (2d Cir. 1996). The Court finds that no reasonable officer

could believe that he had lawful grounds for prosecuting Vinson for Criminal Possession of a Controlled Substance in the Seventh Degree, which provides,

> A person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance
> . . . .

N.Y. Penal Law § 220.03. "Possess" means "to have physical possession or otherwise to exercise dominion or control over tangible property." N.Y. Penal Law § 10.00(8). No reasonable officer would believe that the twist of crack cocaine, found on a public street hours after Vinson was transported to the hospital, where a large group of bystanders gathered after the shooting, was under Vinson's dominion or control so that he could be prosecuted for the possession of it.

### C. *Malice*

In this context, malice means "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996). In most cases, the lack of probable cause "tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Id.* Because the Court finds that there was no probable cause to prosecute Vinson for Criminal Possession of a Controlled Substance in the Seventh Degree, there is a genuine issue of fact as to whether Defendants acted with malice when they did so anyway. Accordingly, Vinson I Defendants' motion for summary judgment of Vinson's malicious prosecution claims is denied.

### III. Vinson's Delay in Arraignment Claims

Vinson was handcuffed and shackled to his hospital bed for 12 days before he was arraigned. When an arrested individual does not receive a probable cause determination within 48 hours, "the burden shifts to the government to demonstrate the existence of a bona fide emergency

or other extraordinary circumstance." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991). Defendants argue that Vinson has no constitutional right to a bedside arraignment. The fact that Vinson was admitted to the hospital has no bearing on his constitutional right to a speedy arraignment and certainly does not qualify as a "bona fide emergency or other extraordinary circumstance." That is precisely why bedside arraignments regularly occur. Defendants' argument that NYPD personnel were not permitted in the ICU to arraign Vinson is equally meritless. Police officers must have been permitted in the ICU at some point because that is where Vinson was arrested, and in any event, the record does not reflect any effort by Defendants to access Vinson's hospital room to arraign him. Accordingly, Vinson I Defendants' motion for summary judgment as to Vinson's delay in arraignment claim is denied.

In Vinson II, Vinson brought a delay in arraignment claim against Vinson II Defendants, who are police officers with the additional roles of Commanding Officer of the Brooklyn Borough Court Section, Brooklyn Borough Court Section Liaison, and supervisor in the Brooklyn Borough Court Section, on the basis that their duties "included forwarding the documents necessary for the scheduling of an arraignment to the clerk of the Criminal Court of the City of New York, County of Kings." (Vinson II Compl. ¶ 13). Vinson claims that the identities of these Defendants were not revealed to him until late in discovery in the Vinson I action and shortly before the Statute of Limitations was set to expire.

Vinson II Defendants argue that Vinson's claim must be dismissed because (1) his allegations flatly contradict those in Vinson I—that Vinson I Defendants, Eng and Bondarenko, were responsible for the delay in arraignment and (2) he does not allege that these Defendants were on duty during the relevant dates and times or that they ever had possession of any of the documents to be forwarded. (ECF No. 19 at 14-15). The Court agrees. Vinson alleges that "[a]s

of December 28, 2013, the *Brooklyn Borough Court Section* was in possession of all paperwork required for delivery to the clerk of the Criminal Court of the City of New York, County of Kings, to schedule an arraignment . . . ." (Vinson II Compl. ¶ 20) (emphasis added). Vinson does not allege that Vinson II Defendants had any personal involvement with the delay in his arraignment, a key pleading requirement for a Section 1983 claim. *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Accordingly, Vinson II Defendants' motion to dismiss is granted.

## CONCLUSION

For the reasons set forth above, Vinson I Defendants' motion for summary judgment is DENIED and Vinson II Defendants' motion to dismiss is GRANTED with prejudice.

SO ORDERED.

Dated:    Brooklyn, New York
          December 17, 2018

/s/ _____
I. Leo Glasser                    U.S.D.J.